(83 App. Div. 370.)

### BRANOWER et al. v. INDEPENDENT MATCH CO.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1 SALES—BREACH OF CONTRACT—EVIDENCE—SUFFICIENCY.

Evidence examined in an action by the purchasers of matches against the seller, and *held* to warrant a finding that there had been a breach of the contract of sale by the defendant.

2. SAME—CONSTRUCTION OF CONTRACT—TIME FOR DELIVERY OF GOODS.

A contract provided that defendant "agrees to sell and [plaintiffs] agree to take twelve car loads * * * matches, to be delivered on the average of two cars per month," and that if, at the end of six months from date, plaintiffs "shall not have taken twelve car loads, they shall have three months' additional time in which to take them." At the end of the six months there were eight car loads undelivered. *Held,* that plaintiffs could order the eight car loads at any time within nine months from the date of the contract.

**8. DAMAGES—EXCESSIVE VERDICT.**

A verdict should be set aside as excessive where the amount found by the jury is greater than that claimed in the complaint, and no motion has been made to amend the complaint, unless plaintiff consents to a reduction of the verdict to the amount claimed.

Appeal from Trial Term, New York County.

Action by Aaron Branower and another against the Independent Match Company. . Judgment for plaintiffs. Defendant appeals. Affirmed conditionally.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

J. C. Van Siclen, for appellant.
Max D. Steuer, for respondents.

INGRAHAM, J. The complaint alleges the making of a contract by which the defendant agreed to sell and deliver to the plaintiffs 12 car loads of matches between the 5th day of December, 1898, and the 5th day of September, 1899, the plaintiffs to have the right to demand the delivery of the whole 12 car loads within six months from the date of the contract, on an average of 2 cars per month; that the defendant had delivered 4 car loads of matches under the contract, but had failed to deliver the balance; that the plaintiffs have demanded of the defendant that it deliver the matches referred to in said contract, but that the defendant has refused to comply with the demand of the plaintiffs, and by reason of such failure the plaintiffs have sustained damage in the sum of $3,560, the difference between the contract price and the market value of the said matches. The contract provided that:

"The Independent Match Company agrees to sell and Branower & Son agrees to take twelve car loads (1,600 gross each) matches to be delivered on the average of two cars per month. If a car is wanted oftener than each two weeks, Branower & Son to give the Match Company reasonable notice. If at the end of six months from date, Branower & Son shall not have taken twelve car loads, they shall have three months' additional time in which to take them."

Then follows the price to be paid for the matches. The answer of the defendant denied the allegations of the complaint, except the incorporation of the defendant, and the making of the contract therein referred to. It appeared from the plaintiffs' evidence that after making the contract the defendant delivered four cars of matches—one in December, 1898, two in January, 1899, and one in March, 1899; that there then resulted a correspondence between the parties. A letter (which, from the record, appears to be dated March 5, 1898, but which is evidently a mistake for 1899) from the plaintiffs to the defendant was introduced, in which complaint was made as to the quality of matches shipped by the last car load, suggesting a change in the brand on the boxes and wrappers, and stating:

"The car which you have already made up for us will try and take next week and will do all we can to sell it. Will let you know in a few days when to ship it."

82 N.Y.S.—15

The defendant wrote on March 7, 1899, in reply:

"We are sorry to learn of the bad matches but are ready to believe what you say in regard to them as we discovered the fault in our dipping man. * * * We want to do everything possible to please you and help you increase your sales and we thank you for giving us the information and suggestions. We will act upon your advice and get up another brand for the Lucky. * * * The car load we have made up for you are wrapped in the heavier paper and the boxes are well filled. Let us know when we shall ship them."

There is no answer to this letter in the record, but on April 5, 1899, the defendant wrote to the plaintiffs, asking if they were willing to cancel the contract, to which the plaintiffs replied on April 9, 1899, that they wanted to deal with the defendant, but that, in consequence of the bad quality of matches, the last car sold very slow; that, as soon as the plaintiffs could get rid of it, they would send an order for the new brand, "and, if same will be satisfactory, will certainly use it right along." On May 31, 1899, the defendant wrote to plaintiffs, complaining that they had not lived up to their contract, and asking what guaranty the defendant had that plaintiffs would take eight car loads within the next three months. On June 1, 1899, the plaintiffs replied, saying:

"In reply to yours of the 31st would say that we never thought about going back on our contract with you, nor do we think so now. You will remember that, when once asked by you whether we are willing to cancel our agreement, we wrote you to the contrary; that we are now in the market for matches, and if the matches will be right will take them as per agreement—more yet. * * * You can ship one car, 1,600 gross, at once—tomorrow or Saturday, and the following every two weeks as per agreement."

This was followed by a telegram from the plaintiffs to the defendant on June 4, 1899, as follows:

"When can you ship, or you would not ship at all. Answer required."

There is no answer to this letter or telegram in evidence, but in a letter dated June 7, 1899, the plaintiffs, after discussing the controversy, said:

"We are paying your price for the goods. We will sure take the quantity of matches you desire to sell. * * * What we have to say in conclusion is this, that we hope to hear from you this week that you will give us the eight cars of matches due to us upon the agreement and that we shall send you at once our order with exact date when to ship."

No answer to this letter appears, but on June 22, 1899, the defendant telegraphed the plaintiffs:

"Yours of 21st at hand. We cannot give you an answer yet. We have had to shut down our factory for several days on account of the excessive heat."

This seems to have been the end of the correspondence, and the defendant made no further effort to comply with the contract. It further appeared that what was called the "Trust" bought out the defendant company in June, 1899. One of the plaintiffs testified that they ordered matches between May 10th and May 29th, and wrote to the defendant asking for the goods repeatedly, but that no goods were shipped in response to these orders. For the defense the manager of the defendant testified that he called upon the plain-

tiffs for the purpose of arranging for shipments of the goods; that the plaintiffs found fault with the goods, and claimed that they were defective, and declined to take any more of them; that they declined to take any more matches at all; that after March 17th, when the last car load was shipped, the defendant never received any orders from the plaintiffs until June 1st; that the defendant continued manufacturing matches until December, 1899, and did not advance the price of matches between May 28 and September 5, 1899; that the defendant did not ship any matches to the plaintiffs pursuant to the letter of June 1, 1899, which said, "You can ship one car 1,600 gross at once—to-morrow or Saturday and the following every two weeks as per agreement."

At the end of the plaintiffs' case, and at the end of the whole case, the defendant moved to dismiss the complaint. This motion was denied, and the court submitted to the jury the question as to whether there was a breach of contract by the defendant, calling attention to the letter of June 1st, and stating:

"Evidence has been given on the part of the defendant tending to show that the plaintiffs had never ordered any matches after the shipment of March 17th. * * * If it is true that the plaintiffs never ordered any matches after the shipment of March 17th, then, of course, there has been no breach of this contract on the part of the defendant, and the plaintiffs. cannot recover. If you are satisfied, after consideration of all the evidence in this case, that the plaintiffs did order a shipment of the remaining eight cars within a period of nine months from the 5th day of December, 1898, and the defendant refused and failed to deliver those matches to the plaintiffs, then there was a breach of this contract, and the plaintiffs would be entitled to such damages as they have sustained."

The defendant excepted to that part of the charge in which the court said, "The plaintiffs had nine months in which to perform under the contract," and also to the further charge that, "if the jury are satisfied that the plaintiffs ordered twelve cars within nine months after the execution of the contract, they are entitled to recover." After the jury retired, they asked the court the following question:.

"The question arises in the case of Branower v. Independent Match Co. as to whether the plaintiffs had the privilege of ordering goods as desired from the date that the contract went into effect until date of its termination, or was it incumbent upon the plaintiffs to order goods on the specific basis. of two cars per month?"

In reply the court said:

"The plaintiffs were not bound to order two car loads of matches per month. They had the right to order the matches at any time during the continuance of the contract, to wit, nine months from the 5th day of December, 1899, giving the defendant, of course, a reasonable time in which to fill the order."

To which the defendant excepted.

There can be no doubt but that the finding of the jury that there was a breach of the contract by the defendant was justified. On June 1, 1899, the plaintiffs distinctly ordered one car load of matches to be shipped within the two following days, and a car load within each of the two following weeks, and the defendant failed to comply with this demand. There was nothing in the prior correspondence that justified the defendant in treating the contract as broken or

abrogated by the plaintiffs. There had been complaint by the plaintiffs of the bad quality of matches shipped under the contract, which seems to have been conceded by the defendant. The defendant then endeavored to obtain the consent of the plaintiffs to abrogate the contract, which the plaintiffs refused to give, and insisted upon its performance. Up to this time there had been no claim made by the defendant that the contract had been abrogated by the delay of the plaintiffs in ordering the matches. While the parties contemplated that two car loads of the matches were to be delivered each month, it was expressly provided that "if, at the end of six months from date, Branower & Son shall not have taken twelve car loads, they shall have three months' additional time in which to take them." The six months from the date of this contract was the 5th day of June, 1899, and the plaintiffs had three months from that date to take the eight car loads. On the 1st of June, 1899, the plaintiffs ordered one car to be sent within the following two days, and a car for every two following weeks. There were then undelivered under the contract eight car loads of matches, which, if the car load then ordered had been delivered, would leave seven car loads. The subsequent delivery of one car load each two weeks would take fourteen weeks from June 1st, which was but little over three months from that date. To this the defendant made no response, and failed to deliver any of the matches so ordered. This was a breach of the contract by the defendant for which plaintiffs were entitled to recover. The instruction to the jury that the defendant had the right to order the eight cars within nine months from the date of the contract was a correct construction of the contract. We also think that the court applied the correct rule as to the damages to which the plaintiffs were entitled. The damages, as claimed in the complaint, were $3,560. The amount found by the jury was $4,864. There was no motion to amend the complaint, and the defendant moved to set aside the verdict as excessive. We think that motion should have been granted, unless the plaintiffs were willing to consent to a reduction of the verdict to the amount claimed in the complaint. The defendant having appealed from the order denying that motion, the order should be reversed, and a new trial granted, unless plaintiffs stipulate to reduce the judgment as entered to the sum of $3,629.12. If the plaintiffs shall so stipulate, the judgment as so reduced and the order are affirmed, without costs. All concur.